UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.:   3:21-CR-101-TAV-JEM-1 |
| | ) | |
| GERARDO YAIR MUNOZ CEDILLO, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This criminal matter is before the Court for consideration of the Report and Recommendation (the "R&R") entered by United States Magistrate Judge Jill E. McCook on June 3, 2022 [Doc. 31]. The R&R addresses defendant's Motion to Suppress [Doc. 19] to which the government responded [Doc. 22] and for which Judge McCook held a hearing on April 12, 2022 [Doc. 27].

The R&R recommends that the Court deny defendant's Motion to Suppress [Doc. 31]. Defendant filed objections to the R&R [Doc. 33], and the government responded [Doc. 35]. This matter is now ripe for resolution. *See* E.D. Tenn. L.R. 7.1. For the reasons discussed below, the Court will **OVERRULE** defendant's objections [Doc. 33], **ACCEPT IN WHOLE** the R&R [Doc. 31], and **DENY** defendant's Motion to Suppress [Doc. 19].

## I.    Background

The Court presumes familiarity with the facts of this case and will only recite facts necessary to the determination of the instant motion. The parties have not objected to any

factual findings in the R&R [Doc. 31 pp. 9–11]. Therefore, the Court adopts the following facts from the R&R.

On July 29, 2021, Trooper Colby Cotner sat in his cruiser at a median on Interstate 81 and observed defendant driving a Porsche Cayenne in the right lane with a temporary license plate. Cotner entered the highway's left lane and followed the Porsche. Cotner paced the Porsche and determined it was traveling at 70 miles per hour. Cotner also witnessed defendant's vehicle come within one car length of the preceding vehicle and that defendant then braked to avoid a collision. Cotner then initiated a traffic stop based on defendant following the preceding vehicle too closely.

After the vehicles stopped, Cotner approached the Porsche and requested defendant's license, registration, and insurance. Defendant provided his Mexican identification, his registration, and a laminated insurance document. Cotner invited defendant to exit his vehicle and join Cotner in his cruiser so they could speak while Cotner wrote a warning citation. In the cruiser, Cotner asked defendant questions about his employment, travel plans, and the Porsche. Cotner also asked if defendant had any money, guns, marijuana, cocaine, heroin, or methamphetamine in the Porsche, and defendant responded in the negative. Throughout the conversation, because English is not defendant's first language, Cotner occasionally needed to repeat himself so that defendant understood his questions. As Cotner finished writing the warning citation, he asked defendant if he could inspect the Porsche to confirm its VIN number, and defendant did

not initially understand the question. However, Cotner repeated the question and defendant responded, "No problem."

Cotner then asked defendant if he was "okay with a search," and defendant appeared to misunderstand the question, stating that he was "okay" but that he had never been inside of a police vehicle. Cotner rephrased his question, asking if it was "okay" for him "to search the vehicle." Defendant again appeared to misunderstand the question, stating the vehicle was "okay" but that it might need gasoline. For a third time, Cotner rephrased his request for consent, stating, "Let me ask you this: To make sure that your story matches that you're only here for work, are you okay with me looking inside the vehicle? Are you okay with that?" Defendant responded, "Yes sir, yes sir." Cotner then announced that he would verify the VIN number and "stuff," and defendant responded, "The VIN number?" Cotner affirmed, stating, "Yeah, and look inside." Finally, Cotner again asked, "But you're good with a search? You're good with me searching?" Defendant again stated, "Yes sir." Ultimately, Cotner and other officers on the scene searched the Porsche and located controlled substances in the spare tire storage area.

## II.    Analysis

Defendant's objections challenge aspects of Judge McCook's findings regarding Cotner's probable cause to stop defendant and defendant's consent for Cotner to search his vehicle [Doc. 33]. Because these are legal objections, the Court reviews them *de novo*. *See* 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b).

## A.    Validity of the Stop

Defendant objects to Judge McCook's finding that Cotner had probable cause to stop defendant for following too closely [Doc. 33 pp. 2–5]. The R&R provides the correct standards regarding when an officer may initiate a traffic stop:

> If an "officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment." *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993), *cert. denied*, 513 U.S. 828 (1994). To determine whether a traffic stop is an unreasonable seizure in violation of the Fourth Amendment, the Court objectively evaluates the officer's conduct in light of the surrounding circumstances known to the officer. *Id.* at 388; *see Whren v. United States*, 517 U.S. 806, 810 (1996). Probable cause is "reasonable grounds for belief supported by less than prima facie proof but more than mere suspicion." *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). In other words, probable cause means a substantial chance or likelihood of criminal conduct. *Ferguson*, 8 F.3d at 392 (citing *Illinois v. Gates*, 462 U.S. 213, 244 n.13 (1983)). A stop based on probable cause that a traffic violation has occurred is reasonable, without regard to the officer's subjective motives. *Whren*, 517 U.S. at 813; *Ferguson*, 8 F.3d at 391.

> Under Tennessee state law, "[t]he driver of a motor vehicle shall not follow another vehicle more closely than reasonable and prudent, having due regard for the speed of the vehicles and the traffic upon and condition of the highway." Tenn. Code Ann. § 55-8-124(a). The Sixth Circuit Court of Appeals has recently examined "what constitutes a 'reasonable and prudent' following distance." *United States v. Howard*, 815 F. App'x 69, 73–74 (6th Cir. 2020). Observing that Tennessee state courts have not defined "reasonable and prudent," the appellate court relied on the Tennessee Comprehensive Driver License Manual ("Manual") to guide its analysis. *Id.* at 74 (citing Tenn. Dep't of Safety & Homeland Sec'y, *Tennessee Comprehensive Driver License Manual* 48–49 (July 1, 2018 ed.)); *United States v. Collazo*, 818 F.3d 247, 255 (6th Cir.), *cert. denied*, 137 S. Ct. 247 (2016). Prior to 2010, the Manual instructed drivers to maintain one car-length of distance for every ten miles per hour of speed. *Howard*, 815 F. App'x at 74; *Collazo*, 818 F.3d at 255. After 2010, the Manual "define[s] a safe following distance in terms of seconds rather than car lengths," providing that "drivers should generally maintain a following distance of at least two seconds" behind the preceding vehicle. *Howard*, 815 F. App'x at

4

74. "During 'interstate highway driving at higher speeds,' however, drivers should maintain a following distance of '[a] minimum of four seconds.'" *Id.* (quoting Manual at 49). The court recognized that it has used both standards in its decisions. *Id.* Although the rules from both editions of the Manual are not binding as to what constitutes a "reasonable and prudent" following distance, our appellate court has found them to "operate as valuable guideposts when determining whether an officer possessed probable cause to stop a vehicle for violating § 55-8-124(a)." *Collazo*, 818 F.3d at 255–56.

[Doc. 31 pp. 12–13 (alterations in original)].

The Court finds that Judge McCook appropriately determined Cotner had probable cause to stop defendant for following too closely. As Judge McCook noted, Cotner determined that defendant traveled at 70 miles per hour, yet defendant followed the preceding vehicle at a distance of approximately one second or one car length [Doc. 28 p. 1 (dash camera recording, 00:00–00:38)]. Moreover, defendant braked to prevent a collision with the preceding vehicle [*Id.*, 00:24–00:28]. *See Howard*, 815 F. App'x at 74–75 (finding an officer had probable cause when the defendant followed the preceding vehicle at a lesser distance than recommended by Tennessee's manuals and the defendant braked to prevent a collision). While Cotner followed defendant, he had ample time to make these observations [Doc. 28 p. 1 (dash camera recording, 00:00–00:35)].[1]

Defendant first objects to the R&R on grounds that it does not explain how Judge McCook determined that defendant followed the preceding vehicle at a distance of one car length. However, Judge McCook explicitly relied on video evidence from Cotner's

---

[1] Defendant claims Cotner trailed defendant for only 10 seconds [Doc. 33 pp. 4–5]; however, video evidence demonstrates Cotner followed defendant for at least 30 seconds before initiating the stop [Doc. 28 p. 1 (dash camera recording, 00:00–00:35)].

dash camera in reaching this conclusion [Doc. 31 p. 14]. This Court has independently reviewed the video evidence and agrees that defendant's trailing distance was approximately one car length or one second [Doc. 28 p. 1 (dash camera recording, 00:00–00:29)].[2]

Defendant next argues that Judge McCook inappropriately treated Tennessee's manuals' guidance on following distance as conclusive [Doc. 33 p. 4]. However, Judge McCook recognized that Tennessee's manuals are "not binding" and that they are only "valuable guideposts" [Doc. 31 p. 13 (citation omitted)]. What is more, Judge McCook considered other factors, including that defendant needed to brake to prevent a collision, and thus she did not in fact treat Tennessee's manuals' guidance as conclusive [*Id.* at 14].

Finally, defendant objects to Judge McCook's consideration of the fact that defendant braked, reasoning that defendant's need to brake derived from the deceleration of the preceding vehicle [Doc. 33 pp. 4–5]. As a preliminary matter, defendant's braking was only one factor Judge McCook considered; as noted, she also considered defendant's unreasonable following distance of one car length or one second [Doc. 31 pp. 13–14]. What is more, the video evidence does not demonstrate that the preceding vehicle decelerated, and in any event, if defendant had maintained a more significant following

_____

[2] To the extent this objection may be construed as factual rather than legal, the Court notes that, for the reasons stated, Judge McCook did not clearly err in determining defendant's following distance. *See United States v. Norton*, No. 2:19-CR-145, 2021 U.S. Dist. LEXIS 47316, at *5–6 (E.D. Tenn. Mar. 15, 2021) (stating that factual objections are reviewed for clear error and that under that standard, "the Court need only consider whether any evidence or showing exists to support the Magistrate Judge's finding and whether the finding was reasonable.").

6

distance, breaking would have been unnecessary [Doc. 28 p. 1 (dash camera recording, 00:00–00:28)]. Thus, defendant's objections to Judge McCook's finding that Cotner had probable cause to stop defendant will be overruled.

## B. Consent

Defendant also objects to Judge McCook's determination that defendant provided voluntary consent as to the search of the Porsche [Doc. 33 pp. 6–10]. The R&R provides the correct standards for determining whether defendant provided voluntary consent:

> An individual's voluntary consent to a search is an exception to the warrant requirement of the Fourth Amendment. A valid search may be made without a warrant and without probable cause if the person voluntarily consents to the search. *Schneckloth v. Bustamante*, 412 U.S. 218, 219, 228–29 (1973); *United States v. Lucas*, 640 F.3d 168, 174 (6th Cir. 2011). The applicability of this exception is evaluated by examining the totality of the circumstances, with the burden resting on the government to prove both actual consent and its voluntary nature. *United States v. Scott*, 578 F.2d 1186, 1188–89 (6th Cir.), *cert. denied*, 439 U.S. 870 (1978). The government must make this showing through "clear and positive testimony" and to a preponderance of the evidence. *United States v. Hinojosa*, 606 F.3d 875, 881 (6th Cir. 2010); *United States v. Worley*, 193 F.3d 380, 385 (6th Cir. 1999).

> "Consent to a search must be voluntary and free of duress or coercion, express or implied." *United States v. Thomas*, 662 F. App'x 391, 395 (6th Cir. 2016) (citing *Bustamonte*, 412 U.S. at 248); *cert. denied* 137 S. Ct. 1599 (2017); *Worley*, 193 F.3d at 386 (requiring that consent to search be "unequivocally, specifically, and intelligently given, uncontaminated by any duress and coercion"). In determining whether consent was voluntary, the Court considers the totality of the circumstances, including the "characteristics" of the consenting individual, such as (1) the individual's age, intelligence, and education level; (2) whether the individual understood he had the right to decline to consent; and (3) whether the individual understood his constitutional rights. *United States v. Ivy*, 165 F.3d 397, 402 (6th Cir. 1998). The Court also considers the "details of the detention," such as (4) the nature and duration of the detention; (5) whether law enforcement used coercive or punitive conduct; and (6) any "indications of 'more subtle forms of coercion that might flaw [an individual's] judgement.'" *Id.* (quoting

7

*United States v. Watson*, 423 U.S. 411, 424 (1976)); *see also Worley*, 193 F.3d at 386. . . .

"A language barrier is a factor to consider when determining the validity of consent." *United States v. Reyes-Martinez*, 1:17-CR-00035-GNS-2, 2020 WL 7379141, at *4 (W.D. Ky. Sept. 25, 2020) (Report & Recommendation), *adopted by*, 2020 WL 6820800 (W.D. Ky. Nov. 20, 2020); *see also United States v. Lopez-Uquiza*, No. 1:10–cr–151, 2011 WL 1841679 (E.D. Tenn. May 13, 2011) (Collier, J.). In this respect, the government has a "heavier" burden of demonstrating consent was voluntary when the individual "is a foreigner who does not readily speak and understand English." *Reyes-Martinez*, 2020 WL 7379141, at *4 (citing *Kovach v. United States*, 53 F.2d 639, 639 (6th Cir. 1931) (per curiam)). "'In determining whether an individual has sufficient comprehension of English to provide voluntary consent, courts examine his ability to interact intelligently with the police.'" *United States v. Valdez*, 147 F. App'x 591, 596 (6th Cir. 2005) (quoting *United States v. Zapata*, 180 F.3d 1237, 1242 (11th Cir. 1999)).

[Doc. 31 pp. 16–18 (alteration in original)].

The Court finds Judge McCook correctly concluded that defendant provided voluntary consent for Cotner to search his vehicle. Video evidence indicates that defendant's age and intelligence did not preclude him from providing consent [*See generally* Doc. 28 p. 1 (cruiser interview recording)]. Indeed, despite that English is not defendant's first language, defendant intelligently conversed with Cotner for nearly 20 minutes with minimal difficulty before Cotner requested consent, and this demonstrates that defendant's language barrier did not preclude his consent [Doc. 28 p. 1 (body camera recording, 01:38–20:58)]. Similarly, there is no evidence that the nature of the detention precluded consent or that Cotner utilized coercive tactics. While the detention occurred in Cotner's cruiser, Cotner and defendant's conversation was cordial, and the conversation lasted less than half an hour [*Id.*]. Further, while Cotner asked defendant multiple times to

8

search his vehicle, Cotner did so only to verify that defendant understood Cotner's request [*Id.*, 20:58–21:47].

Additionally, Cotner's questioning demonstrates defendant's consent was voluntary. Notably, Cotner asked defendant for consent four times, and defendant twice provided consent after Cotner alleviated the misunderstanding about his request [*Id.*]. And Cotner made these requests only after he questioned defendant about the contents of the vehicle as a whole, including whether it contained money, marijuana, heroin, or other controlled substances [*Id.*, 16:39–17:06].

Defendant first objects to Judge McCook's application of several cases addressing the issue of when a defendant with a limited understanding of English provides voluntary consent [Doc. 33 pp. 7–8]. For example, defendant argues Judge McCook inappropriately relied on *Reyes-Martinez*, 2020 WL 7379141, because, according to defendant, there is no evidence that the defendants in *Reyes-Martinez* did not understand English [*Id.* at 7]. However, despite defendant's contention, the court in *Reyes-Martinez* explicitly noted that "some degree of language barrier existed." 2020 WL 7379141, at *4. Defendant also argues *United States v. Singh*, No. 3:18-CR-180-CRS, 2019 WL 2783564 (W.D. Ky. July 2, 2019), does not support Judge McCook's finding because, unlike here, the defendant in *Singh* answered questions with little hesitation [Doc. 33 p. 7]. However, while defendant misunderstood some questions, Cotner clarified all misunderstandings, and defendant's language barrier did not prevent him from understanding Cotner's consent request.

9

Next, defendant highlights that, unlike here, the defendant in *Lopez-Urquiza*, 2011 WL 1841679, provided written consent in Spanish [*Id.* at 8]. But *Lopez-Urquiza* does not suggest that written consent is required for voluntary consent, and as in *Lopez-Urquiza*, defendant's questioning lasted approximately 20 minutes, the defendant was asked to exit his vehicle and whether there were drugs in the vehicle, and the defendant gave oral consent to a search in English. *See* 2011 WL 1841679, at *5. Defendant further contends that Judge McCook erroneously relied on *Hunt v. Zuniga*, 613 F. App'x 506 (6th Cir. 2015), and *Valdez*, 147 F. App'x 591, because unlike here, the defendants in those cases consented without hesitation and without indicating a lack of understanding [Doc. 33 p. 8]. But in *Zuniga*, like here, the defendant did not fully understand English, the defendant answered several questions regarding his license, insurance, itinerary, and employment before providing consent, and no evidence of coercion existed. *See* 613 F. App'x at 508. Similarly, in *Valdez*, like here, the defendant promptly produced his driver's license and answered questions about his destination. 147 F. App'x at 596.[3]

Defendant finally suggests Judge McCook improperly relied on *United States v. Mariscal*, No. 2:18-CR-112, 2019 WL 3368923 (E.D. Tenn. Mar. 8, 2019), because, unlike here, the officer in *Mariscal* spoke with defendant using both English and Spanish [Doc. 33 p. 8]. However, it is not required that an officer converse with a Spanish-speaking

---

[3] Defendant highlights that, unlike these cases, he had his insurance and other documentation ready before Cotner requested it [Doc. 33 p. 7]. However, the evidence reflects that defendant did not hand the documentation to Cotner until after Cotner requested defendant's driver's license [*See* Doc. 28 p. 1 (body camera recording, 01:50–02:40)].

10

defendant in Spanish.  *See, e.g.*, *Zuniga*, 613 F. App'x at 508.  In sum, despite any distinctions, the cited cases support Judge McCook's conclusion that defendant provided voluntary consent.  Regardless, the voluntariness of consent depends on the totality of the circumstances, and as already discussed, the circumstances suggest defendant's consent was voluntary.

Defendant next objects to Judge McCook's consideration of evidence of defendant's intermittent difficulty in understanding Cotner [Doc. 33 pp. 7–9].  Specifically, defendant argues that defendant's repeated failure to understand Cotner during their conversation demonstrates that defendant did not understand Cotner's consent request [*Id.*].[4]  While defendant had occasional difficulty understanding Cotner, with Cotner's willingness to repeat statements where necessary, the evidence suggests defendant could understand Cotner, including regarding his consent request [Doc. 28 p. 1 (cruiser interview recording, 20:58–21:47)].  Indeed, Cotner repeated his request for consent four times [*Id.*].

Finally, defendant argues Judge McCook erred in determining defendant provided valid consent because defendant was unaware of his constitutional rights, including his right to refuse consent [Doc. 33 p. 9].  But Judge McCook reached her conclusion based on all of the circumstances despite recognizing that there is no evidence that defendant understood his rights [Doc. 31 pp. 19–20].  For the reasons already explained, the Court agrees.  While there is no direct evidence that defendant knew of his right to refuse consent

---

[4] For example, in one instance, defendant had initial difficulty understanding who owned defendant's vehicle [Doc. 28 p. 1 (body camera recording, 2:18–2:33)].

or his other constitutional rights, "[n]o single factor is dispositive in" the voluntary consent analysis. *Reyes-Martinez*, 2020 WL 7379141, at *4 (citations omitted). Thus, defendant's objections to Judge McCook's finding that defendant provided voluntary consent to the search of his vehicle will be overruled.[5]

## III. Conclusion

For the foregoing reasons, the Court finds the findings and recommendations in the R&R are correct. Thus, defendant's objections [Doc. 33] are **OVERRULED**. The Court **ACCEPTS IN WHOLE** the R&R [Doc. 31] and incorporates the R&R into this Memorandum Opinion and Order. Therefore, defendant's Motion to Suppress [Doc. 19] is **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

---

[5] The Court has reviewed and agrees with the R&R insofar as the issues of scope of consent and probable cause to search the vehicle are concerned [*See* Doc. 31 pp. 24–29]. However, the Court provides no analysis as to these issues because the parties have not objected to Judge McCook's analysis as to these issues.

12